UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL CASE NO. 22-51-DLB-CJS

UNITED STATES OF AMERICA                                             PLAINTIFF

v.                          MEMORANDUM ORDER
                  ADOPTING REPORT AND RECOMMENDATION

ANTHONY MARIO WYNN                                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the August 25, 2023 Report and Recommendation ("R&R") of Magistrate Judge Candace J. Smith (Doc. # 73), wherein she recommends that the Court deny Defendant Anthony Mario Wynn's Motion to Suppress (Doc. # 34). Defendant Wynn having filed Objections (Doc. # 74), and the United States having filed a Response (Doc. # 75), the R&R is ripe for the Court's consideration. For the following reasons, the Defendant's Objections are **overruled**, the R&R is **adopted**, and the Motion to Suppress is **denied.**

I.      FACTUAL AND PROCEDURAL BACKGROUND

The traffic stop at issue in this case occurred on August 28, 2020, shortly after 3:00 a.m. (Doc. # 73 at 2). Officer Morris was out on uniformed patrol in Covington, Kentucky. (*Id.*). While on patrol, he observed a car with no license plate, followed the car, and ran the temporary tag that was taped to the rear window of the car. (*Id.*). While Officer Morris was running the tag, he observed the car turn onto the right shoulder. (*Id.*). The car

1

continued to drive on the shoulder rather than correcting course into the regular lane of traffic. (*Id.*). Officer Morris then initiated a traffic stop. (*Id.*).

Officer Morris testified that he smelled marijuana when he approached the vehicle. (*Id.*). Defendant Wynn was the only person in the vehicle. (*Id.*). Officer Morris suspected that Wynn was under the influence and so he contacted Officer Douglas Ullrich, who specializes in narcotics and DUI investigations. (*Id.*). Once Officer Morris made contact with Wynn, he collected Wynn's license and registration. (*Id.* at 3). Officer Morris thought the temporary tag on the vehicle looked like it had been altered, and when he tried to ask Wynn about it he did not directly answer—first stating "[t]hat's the driver's license, sir" and then "[i]t's my brother's car, I don't know." (*Id.*). This interaction with Wynn made Officer Morris "more concerned" that Wynn was not sober because Wynn was not "able to follow the line of questioning exactly." (*Id.*).

Officers Ullrich and Daniel Elsbernd arrived at the scene soon after. (*Id.*). Officer Morris told Officer Ullrich about the marijuana smell and that Wynn had turned into the emergency shoulder while driving and did not correct his course. (*Id.*). Officer Morris then went to his cruiser to run Wynn's information through the police database, and Officer Ullrich approached Wynn. (*Id.* at 3-4). Officer Ullrich testified that he could smell marijuana when he approached the vehicle. (*Id.* at 4). He also testified that based on his training and experience, "drugs are very closely associated with weapons and specifically firearms" and so there is "an elevated concern for weapons" whenever "a traditional traffic stop" transitions "into a potential drug investigation." (*Id.*).

Officer Ullrich testified that he found Wynn's travel plans not "reasonable or logical." (*Id.* at 5). Wynn told Officer Ullrich that he was on his way to the house of the

2

mother of his child.  (*Id.* at 4).  Wynn also indicated that he did not know how to get there and did not know how to spell the street name, and therefore was unable to put the location into his GPS.  (*Id.*).  Officer Ullrich asked Wynn if he realized he was driving on the shoulder, and Wynn replied that he had planned to pull over at the turn because he did not know where he was going.  (*Id.*).  He told Officer Ullrich he was coming from Cincinnati and was "just trying to get home."  (*Id.*).  Officer Ullrich asked Wynn if he had been drinking, and Wynn denied having anything to drink that night.  (*Id.*).  Wynn also told Officer Ullrich someone had given him twenty dollars for a ride, whom he had just dropped off.  (*Id.*).

Officer Ullrich asked Wynn if he "carried a gun, a knife, anything like that?" to which Wynn responded in the negative stating, "This is not my car."  (*Id.* at 5).  Wynn answered "no, sir" when Officer Ullrich clarified that the question was directed at Wynn's person.  (*Id.*).  Officer Ullrich testified that Wynn appeared "extremely nervous" and that he found Wynn's responses to questions concerning.  (*Id.*).

Officer Ullrich asked Wynn to step out, turn around, and place his hands on top of the vehicle.  (*Id.* at 6).  Wynn stepped out of the car, but said he had the right to remain in the car because he had done nothing wrong.  (*Id.*).  Wynn's reluctance to get out of the car added to Officer Ullrich's concern that there might be a weapon in the car or that Wynn might try to flee.  (*Id.*).  Officer Ullrich again asked Wynn to place his hands on top of the car.  (*Id.*).  Officer Ullrich testified that when Wynn turned around, he "reached down towards his right hip."  (*Id.*).  This was concerning to Officer Ullrich because "that's where most people carry most of their weapons."  (*Id.*).  Officer Ullrich grabbed Wynn and placed him in handcuffs for "safety reasons."  (*Id.*).

3

Officer Ullrich then conducted a pat down of Wynn. (*Id.*). During the pat down, Officer Ullrich felt a "foreign object" along Wynn's right leg that he believed was marijuana. (*Id.*). Officer Ullrich pulled the object out of Wynn's pocket and confirmed it was marijuana. (*Id.* at 7). Officer Morris then informed Officer Ullrich that Wynn had "a drug alert out of Ohio" for being a "known drug user." (*Id.*).

As Officer Ullrich continued his pat down of Wynn, he discovered that Wynn had another foreign object in front of his groin. (*Id.* at 8). In order to continue his search, Officer Ullrich went to the back of his cruiser to retrieve gloves. (*Id.*). Officers Morris and Elsbernd stayed with Wynn. (*Id.*). Wynn indicated that wanted to grab his phone from his vehicle, but officers denied his request and placed him face-down on the hood of the cruiser. (*Id.*). Wynn struggled against them and continued to ask for his phone. (*Id.*).

Officer Ullrich returned to Wynn and the other officers and attempted to remove a lanyard from Wynn's neck. (*Id.* at 9). Wynn tried to pull away from Officer Ullrich, who eventually forcibly removed the lanyard. (*Id.*). Wynn continued to struggle against officers, who eventually took him to the ground to get more control. (*Id.* at 9-10).

Once on the ground, Wynn continued to struggle against officers. (*Id.* at 10). Officer Ullrich told Wynn the officers were going to search him, to which Wynn replied "You're not searching me. You're going to have to kill me." (*Id.*). Wynn continued to struggle against the officers as they attempted to search him. (*Id.*). Officer Ullrich testified that after ten minutes of this struggle he grew concerned that the continued struggling would injure Wynn or the officers. (*Id.*). For this reason, he decided to cut Wynn's underwear with paramedic shears. (*Id.*).

4

Officer Ullrich cut Wynn's underwear and recovered a bag of suspected cocaine. (*Id.* at 10-11). Officer Ullrich testified that because Wynn's loose-fitting pants had lowered during the continued struggle with officers, they did not need to remove his pants to cut Wynn's underwear. (*Id.*). After recovering the drugs, officers placed Wynn in the back of Officer Ullrich's cruiser. (*Id.* at 11). Officer Ullrich took Wynn to the hospital and eventually, the jail, while Officers Morris and Elsbernd remained behind to search Wynn's car. (*Id.*).

Officers seized two firearms and a cell phone from the search of Wynn's car. (*Id.*). One firearm was found in the glove compartment. (*Id.*). Officers used a key from the lanyard taken from Wynn's person to unlock the glove compartment and retrieve the firearm. (*Id.*). Officers found the second firearm in a backpack in the trunk of Wynn's car. (*Id.*). Finally, officers found a cell phone in the car, and Officer Morris placed it in airplane mode pursuant to Covington Police Department procedure. (*Id.*). Officer Morris testified that he executed two search warrants to download the information on the cell phone. (*Id.* at 11-12).

On August 11, 2022, Wynn was indicted for one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). (Doc. # 13).

Wynn filed a Motion to Suppress on December 16, 2022 seeking to suppress all evidence obtained during the August 28, 2020 search of his vehicle and person. (Doc. # 34). Wynn raised three arguments in his motion. First, Wynn argued that the initial stop

was improper because it was not supported by a warrant. (Doc. # 73 at 31; Doc. # 34 at 3). Second, Wynn argued officers did not have authority to search the vehicle or cell phone as a search incident to a lawful arrest. (Doc. # 73 at 13; Doc. # 34 at 3). Finally, Wynn argued that officers improperly prolonged the stop and that the search was objectively unreasonable. (Doc. # 73 at 13; Doc. # 34 at 4). Magistrate Judge Smith held an evidentiary hearing on April 3, 2023. (Doc. # 60). On July 7, 2023, Wynn filed a Post-Hearing Brief in Support, additionally arguing that Officer Ullrich's testimony at the evidentiary hearing was not credible. (Doc. # 73 at 13; Doc. # 71 at 3-4). On July 15, 2023, the United States file its Post-Hearing Brief in Opposition. (Doc. # 72).

On August 25, 2023, Magistrate Judge Smith issued an R&R recommending that Wynn's Motion to Suppress be denied. (Doc. # 73). Wynn filed his Objections to the R&R (Doc. # 74), and the United States filed its Response. (Doc. # 75). The R&R is now ripe for this Court's review. For the reasons stated below, Defendant Wynn's objections are **overruled**, and the R&R is **adopted**, and the Motion to Suppress is **denied**.

**II.    ANALYSIS**

    **A.    Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1)(2), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28

U.S.C. § 636(b)(1)(C).  Failure to object is considered waiver of the party's right to review.  Fed. R. Crim. P. 59(b)(2).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted).  Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001).  "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'" *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

### B. Defendant Wynn's Objections to the R&R

Defendant Wynn provided seven objections to Magistrate Judge Smith's R&R. (Doc. # 74).  These objections do not raise any additional arguments nor even state why Wynn disagrees with Magistrate Judge Smith's conclusions.  Instead, Wynn simply restates Magistrate Judge Smith's legal conclusions.  The Objections state as follows:

> [T]he Defendant objects to the Magistrate Judge's finding that:
>
> 1. The initial stop of Mr. Wynn was reasonable and did not violate the Fourth Amendment based upon an officer's assertion that Mr. Wynn was driving erratically;
>
> 2. That the continued detention of Mr. Wynn after the initial traffic was reasonable and did not violate Mr. Wynn's right to be free from unreasonable search and seizure;

> 3. That the officers had reasonable suspicion that Mr. Wynn was armed and dangerous justifying a pat down search;
>
> 4. That the search of Mr. Wynn, on the side of the road, including holding him down and cutting off his underpants with scissors, was reasonable and did not violate Mr. Wynn's right to be free from unreasonable search and seizure;
>
> 5. That the search of the automobile Mr. Wynn was driving, including the glove compartment, trunk, and containers located in the trunk were reasonable and not violative of Mr. Wynn's Fourth Amendment right to be free from unreasonable search and seizure.
>
> 6. That the seizure of the keys from around Mr. Wynn's neck and use of the keys to open the glove compartment, without a search warrant did not violated [sic] Mr. Wynn's Fourth Amendment right to be free from unreasonable search and seizure.
>
> 7. Additionally, Mr. Wynn objects to the Magistrate Judge's finding that the officer's conduct when seizing and manipulating the cell phone located during the traffic stop, did not result in an unreasonable and unconstitutional search of the cell phone.

(*Id*. at 1-2).

These statements are not proper objections because they simply "state a disagreement with [the] magistrate's suggested resolution." *Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (quoting *VanDiver*, 304 F. Supp. at 938). Wynn has not offered specific or nonconclusory objections to the R&R.

Even if proper, Wynn's objections are without merit. The Court agrees with Magistrate Judge Smith's thorough analysis regarding each issue raised in Wynn's motion to suppress. Officer Morris had reasonable suspicion to make the initial stop because Wynn's driving behavior made Officer Morris think Wynn may have been driving under the influence. (*See* Doc. # 73 at 14) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Officers did not improperly prolong this stop because the officers had reasonable suspicion of criminal activity when they approached the car and could smell marijuana. (*See id*. at 20) (citing *United States v. Noble*, 364 F.

8

App'x 961, 964 (6th Cir. 2010)).  Because Officer Ullrich had reasonable suspicion that Wynn had drugs in his vehicle, he also had reasonable suspicion that Wynn may have been armed.  (*See id*. at 27) (citing *Noble*, 364 F. App'x at 965) ("[O]fficers had a reasonable belief that Noble may be armed because of their suspicion that he was involved in illegal drug activity.").  Therefore, the pat down conducted by Officer Ullrich was lawful.  Under the plain feel doctrine, the marijuana seized as a result of this pat down was seized legally.  (*See id*. at 29-30) (citing *United States v. Walker*, 181 F.3d 774, 775 (6th Cir. 1999)).

Based on the seizure of marijuana, officers had probable cause to lawfully arrest Wynn.  The subsequent search was lawful as a search incident to a lawful arrest, and therefore a warrant was not required. (*See id*. at 32-35) (citing *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004)).  In his Post-Hearing Brief, and again in his Objections, Wynn asserts the search was unreasonable when officers held him on the ground and cut off his underwear to retrieve the evidence of cocaine from his groin area. (Doc. # 71 at 1; Doc. # 74 at 1).  Magistrate Judge Smith concluded this search was reasonable given exigent circumstances.  (*See* Doc. # 73 at 36) (citing *United States v. Jackson*, 801 F. App'x 941, 947 (6th Cir. 2020), *cert. denied*, 140 S. Ct. 2789 (2020)) (finding that the brief removal of the defendant's pants at night for just long enough to retrieve suspected drugs was reasonable).  Absent more specific objections from Wynn, the Court agrees.

Officers also lawfully searched Wynn's vehicle and seized his cell phone.  It was reasonable for officers to believe there was further evidence of the crime of arrest in the vehicle based on what they found on his person.  (*See id.* at 39-40) (citing *Arizona v.*

9

*Gant*, 556 U.S. 332, 351 (2009); *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020)). Additionally, the officers had probable cause to search Wynn's vehicle under the automobile exception because they had probable cause to believe that it may contain evidence of a crime. (*See id.* at 40) (citing *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011)). Magistrate Judge Smith noted that "the Sixth Circuit has held that the smell of marijuana coming from a vehicle, alone, provides probable cause to search the vehicle." (*See id.*) (citing *United States v. Sheckles*, 996 F.3d 330, 345 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 717 (2021)). Wynn objects to the seizure of the keys around his neck to access the glove compartment of his vehicle. (Doc. # 74 at 2). However, this Court has previously found it reasonable for officers to seize keys to access a glove compartment where there was reasonable suspicion of evidence of criminal activity in the vehicle. *See United States v. Turner*, No. 18-53-DLB-CJS-1, 2019 WL 2814648, at *5 (E.D. Ky. July 2, 2019).

Finally, there was no improper search of Wynn's cell phone. The facts show Officer Morris just put the phone in airplane mode after seizing it. (Doc. # 73 at 44). He did not retrieve any evidence from the phone without a warrant, and Wynn does not argue that he did. (*See id.*; Doc. # 74 at 2). As such, there was no warrantless search of the cell phone and therefore, no evidence from the phone to suppress.

### III.     CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** as follows:

(1)     The Magistrate Judge's R&R (Doc. # 73) is **ADOPTED**;

(2)     Defendant Wynn's Objections (Doc. # 74) to the R&R are **OVERRULED**;

(3)     Defendant Wynn's Motion to Suppress (Doc. # 34) is **DENIED**; and

(4)     This matter is scheduled for a **Scheduling Conference** on **Friday, October 20, 2023 at 11:30 a.m. in Covington**.

This 18th day of October, 2023.

Signed By:
*David L. Bunning*  DB
United States District Judge